

CLERK'S OFFICE
A TRUE COPY
Sep 19, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

❏ Original    ❏ Duplicat

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* ) | Case No. 25 MJ 164 |
| A black Foxx brand cell phone with one rear camera in ) | |
| a clear case, currently on MPD Inventory #2514868, ) | |
| item #2. ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ Wisconsin _____
*(identify the person or describe the property to be searched and give its location)*:

See attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____ 10/03/2025 _____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Honorable William E. Duffin _____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*  ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:    09/19/2025 at 10:50 a.m.          *Judge's signature*

City and state:    Milwaukee, WI          Honorable William E. Duffin, U.S. Magistrate Judge
                                          *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

**Property to Be Searched**

1. "The Target Cell Phone", described as a **black Foxx brand cell phone with one rear camera in a clear case,** currently on MPD Inventory #2514868, item #2.

## ATTACHMENT B

**Particular Things to be Seized**

All records and information contained in the Target Cell Phone, more fully described in Attachment A, that relate to violations of Title 18, USC, Section 922(a)(1)(A) (Dealing Firearms without a License) and Title 18, USC, Section 922(a)(6) (False Statement to Purchase a Firearm) involving Adrian Allen, including but not limited to the following:

    a.      photographs, videos, or other media storage connected to the purchase, manufacture or sale of firearms;

    b.      any messages or communications using any medium or application relating to the manufacture, sale or purchase of firearms

    b.      any stored GPS location tracking/logging files that may provide evidence as to the targets' travels, and may provide evidence as to the location where the alleged illegal actions occurred;

    c.      types, amounts, and prices of firearms purchased or sold and any information related to source(s) of firearms or firearms parts;

    d.      any and all financial records connected to the purchase/sale of firearms;

    e.      any evidence of the proceeds of firearm trafficking activities, including photographs of United States currency or bank records or financial records; and

    f.      lists of firearm customers and/or sources and related identifying information;.

    1.      Evidence of user attribution showing who used or owned the Target Cell Phone at the time the things described in this warrant were created, edited, or deleted, such as logs,

2

phonebooks, saved usernames and passwords, documents, photographs, biometric information and browsing history;

2.     Records evidencing the use of the Internet Protocol address to communicate with using the internet including:

a.     records of Internet Protocol addresses used;

b.     records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.



CLERK'S OFFICE
A TRUE COPY
Sep 19, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A black Foxx brand cell phone with one rear camera in<br>a clear case, currently on MPD Inventory #2514868,<br>item #2. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.   25    MJ    164 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See attachment A

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized):*

See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC § 922(a)(1)(A) | Dealing Firearms without a License |
| 18 USC § 922(a)(6) | False Statement to purchase a Firearm |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Jonathon Newport*    Digitally signed by Jonathon Newport
Date: 2025.09.17 14:23:58 -05'00'

*Applicant's signature*

TFO Jonathon Newport

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: _____ 09/19/2025 _____

*Judge's signature*

City and state:   Milwaukee, WI      Honorable William E. Duffin, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jonathon Newport, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—a cell phone, more fully described below and in Attachment A—which are currently in law enforcement possession, and the extraction from that property of the electronically stored information described in Attachment B.

2.      I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms & Explosives and have been since November of 2024. I am tasked with investigating federal firearm violations, including possession of machine guns, straw purchasing of firearms, felons in possession of a firearm, and firearm trafficking. I have been a Police Officer for the Milwaukee Police Department and have been a Police Officer for over twelve (12) years. I am currently assigned to the Milwaukee Police Department's Special Investigations Division. I am assigned to the Violence Reduction Unit, responsible for aiding in investigations of crimes, such as, but not limited to: Homicide, First Degree Reckless Injury, First and Second Degree Recklessly Endangering Safety, Armed Robbery, weapon offenses, and drug dealing. I am primarily focused on investigating drug and firearm offenses, contrary to Wisconsin State Statute and USC. I have primarily investigated drug and firearm offenses for over twelve (12) years in various capacities, including federally as a Task Force Officer for the FBI and currently for ATF. I am considered an expert by court standards and have testified as an expert in court proceedings related to drug dealing of marijuana, cocaine, heroin, fentanyl and methamphetamine. I have been involved in the execution of at least 500 residential search warrants. I have been the affiant and assisted in firearm and drug search warrants to include: residential, forensic cell download/analysis, social media, cloud storage, GPS, and trap and trace to aid in investigations. I have attended various trainings regarding firearm and drug investigations to include: Characteristics of Armed Gunmen, Non-Drug evidence, Detective Development Course, Plain Clothes (Undercover)

2

Training, Drug Expert Court Testimony, Undercover Operations in Cook County Criminal Justice System, Effective Investigative Techniques of Cellular Phones in Investigations, and the FBI's Understanding Investigative Techniques for Modern Communication Course.

3. The facts in this affidavit come from my personal observations, my training and experience, my review of documents, information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, USC, Section 922(a)(1)(A) (Dealing Firearms without a License) and Title 18, USC, Section 922(a)(6) (False Statement to Purchase a Firearm). There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

5. The United States, including **Bureau of Alcohol, Tobacco, Firearms & Explosives** is conducting a criminal investigation of Title 18, USC, Section 922(a)(1)(A) (Dealing Firearms without a License) and Title 18, USC, Section 922(a)(6) (False Statement to Purchase a Firearm), committed by Adrian D. Allen (DOB: 12/19/2003)

6. On April 18, 2025, Affiant was made aware that Adrian Allen reported ten (10) firearms stolen from an unlocked vehicle. Allen reported that his mother does not like firearms in the residence, Allen had to store all his firearms in gray truck and must have kept the truck unlocked, because the following morning all the firearms were not in the vehicle.

7. One firearm that Allen did NOT report stolen on April 18, 2025 was a Glock 20c 10mm, bearing serial number CDFE970. As described in more detail below, that firearm was purchased by Allen on March 19, 2025, and recovered from Tayveon Keaton on March 25, 2025 (six days later). In other words, although Allen definitely did not have this weapon (because it had been confiscated by police six days after he purchased it), he did not report to police that it had been taken from him along with his other weapons.

8. The Glock 20, 10mm pistol, with a serial number of CDFE970 was found in possession of Tayveon Keaton. Keaton is a convicted felon from Milwaukee Co. Court cases

17CF4039 [Theft-Moveable Property fr. Person/Corpse, 943.20(1)(a), class G felony], 22CF4790 [Robbery with Threat of Force, 943.32(1)(b), class E felony]. Under Milwaukee Co. Court case 25CF1504, Keaton is charged with Felon in Possession of a Firearm [941.29(1m)(a), class G felony] from Keaton's arrest with Allen's purchased Glock; a review of Milwaukee Police Department report C2503250147 revealed that a box for a Glock 45 was in the vehicle with Keaton.

9.     Following this discovery, Affiant initiated a weapons investigation into Adrian Allen, based on the belief that Allen is straw purchasing firearms for convicted felons. Affiant searched for firearms that were purchased by Allen either through E-Traces of firearms that were recovered, multiple purchases, or reported stolen firearms. Affiant discovered the following:

10.    On January 7, 2025, Adrian Allen purchased a Glock 26 Gen 4, 9mm pistol (S/N BBTU960), from EGun Direct, located at 12614 W. Hampton Ave., Butler, Wisconsin.

11.    On January 8, 2025, Adrian Allen purchased a Glock 22 Gen 4, .40S&W pistol (S/N BFBA318), from EGun Direct, located at 12614 W. Hampton Ave., Butler, Wisconsin.

12.    Affiant reviewed the Milwaukee Police call P2504181366, which occurred on January 8, 2025. The 911 call was made by Adrian Allen, who utilized the phone number of 262-350-0726 to call 911 and report the theft of a firearm. Allen provided his address as 1935 North 26th Street, Milwaukee, Wisconsin. Affiant reviewed the Body Camera footage, which showed that Allen was not located at the residence he reported to the Officers. Allen later appeared through a gangway from an unknown location to speak with Officers. Allen reported to the Officers that Allen had a Glock 26 stolen from him that Allen just purchased on January 7, 2025, in Allen's name. Allen was joined by another person that appeared from the same area that Allen walked from. Allen purchased the gun from E-Gun Direct. Allen only reported one firearm was taken and only identified as Glock 26. Allen provided his actual address at 1938 North 26th Street, Milwaukee, Wisconsin.

13.    On January 9, 2025, at Adrian Allen walked into the District Three Police Station in Milwaukee, Wisconsin to report a stolen firearm. Allen reported to Officer Deja Sloan that Allen left firearms in Allen's friend's vehicle while attending the Courtside Sports Bar, located at 9012 West Silver Spring, Milwaukee, Wisconsin on January 8, 2025, between 7:00PM and 8:00PM. Allen reported that he exited the residence and observed that the back window was broken, and Allen knew his firearms were stolen. Allen's friend's vehicle was a red 2015 Chevrolet. Allen did not know who stole the firearms but believed that Allen's friend had someone take the firearms from the vehicle. Allen did not know Allen's friend's name or phone number and knew the friend

as "Cartie otw". Allen provided "Cartie otw" address as 3330 West Wisconsin Avenue, Milwaukee. Allen called the Police, but did not have the firearm paperwork available and had to go to the store to procure it.

14.     Allen made conflicting statements to officers about the "theft".  Allen told the initial Officers on January 8, 2025, at 6:11PM, that only one firearm was stolen. On the following day Allen informed Officer Sloan that two firearms were stolen, providing the firearm information as: Glock 22 Gen4, .40S&W pistol (S/N BFBA318) and Glock 26 Gen 4, 9mm pistol (S/N BBTU960); those firearms were purchased on January 7th, 2025, and January 8th, 2025, by Adrian Allen.  Allen also claimed the two firearms were stolen between 7:00 PM and 8:00 PM on January 8th, which would have occurred approximately one hour after Allen was with the initial Police Officers to make this report.

15.     On January 9, 2025, Adrian Allen purchased a Glock 21 Gen 4, .45AUTO pistol (S/N WXC780), from EGun Direct, located at 12614 W. Hampton Ave., Butler, Wisconsin.

16.     On January 14, 2025, Adrian Allen purchased an Eksen Arms Inc., MKA A-1919-XN 12-gauge shotgun (S/N 1302582), from EGun Direct, located at 12614 W. Hampton Ave., Butler, Wisconsin.

17.     On February 2, 2025, Adrian Allen purchased a Glock 23 Gen 4, .40S&W pistol (S/N YVE794) and a Glock 22 Gen 4, .40S&W pistol (S/N XHW665), from EGun Direct, located at 12614 W. Hampton Ave., Butler, Wisconsin.

18.     On February 4, 2025, Adrian Allen purchased a Glock 19 Gen5, 9mm pistol (S/N CDYK411), from EGun Direct, located at 12614 W. Hampton Ave., Butler, Wisconsin.

19.     On March 11, 2025, Adrian Allen purchased a Glock 21 Gen4, .45ACP pistol (S/N AHEF888), from EGun Direct, located at 12614 W. Hampton Ave., Butler, Wisconsin.

20.     On March 11, 2025, Adrian Allen went into District Five Police Station in Milwaukee, Wisconsin to report a theft of firearms. Allen reported that Allen was in front of Allen's residence at 3155 North 8th Street, Milwaukee, Wisconsin. Allen was in the process of moving and placed three (3) firearms on the front and back seats of Allen's vehicle. Allen left the car unlocked to go and grab more items from inside of the residence. Allen returned to the vehicle and observed that all the firearms were missing. Allen reported that the following firearms were stolen: Glock 23 Gen4, .40S&W pistol (S/N YVE794), Glock 22 Gen4, .40S&W pistol (S/N XHW665) and Glock 21, .45 ACP (No serial number provided); both the Glock 23 and Glock 22 were purchased at the same time on February 2, 2025, at EGun Direct.

21.     On March 12, 2025, Adrian Allen purchased a Glock 21 Gen4 .45ACP pistol (S/N AHEF929), from EGun Direct, located at 12614 W. Hampton Ave., Butler, Wisconsin.

22.     On March 17, 2025, Adrian Allen purchased a Glock 29, 10mm pistol (S/N BXSR052), from the Shooter's Shop, located at 2465 South 84th Street, West Allis, Wisconsin.

23.     On March 19, 2025, Adrian Allen purchased a Glock 20c, 10mm pistol (S/N CDFE970) and a Freedom Ordinance FX-9, 9mm pistol (S/N 070153), from Brew City Shooter, located at 2339 South 43rd Street, West Milwaukee, Wisconsin.

24.     On March 25, 2025, Adrian Allen purchased a Glock 19x, 9mm pistol (S/N CDZH693), from Brew City Shooter, located at 2339 South 43rd Street, West Milwaukee, Wisconsin.

25.     On March 25, 2025, at 8:29PM, Milwaukee Police Officers conducted a traffic stop at 2251 North 16th Street, Milwaukee. Officers spoke with the driver, identified as: Tayveon A. Keaton (black male, 03-23-2000). Officers observed Keaton twisting and turning towards the rear passengers and other passengers doing the same. Officers smelled marijuana in the vehicle and requested the occupants to exit. An Officer observed a black Glock pistol concealed between the front passenger door and seat; the pistol was the Glock 20c, 10mm pistol (S/N CDFE970), which was purchased by Adrian Allen a few days prior. Officers searched the trunk of Keaton's car and located a Glock gun case for a Glock 45. Officers spoke with the front passenger Zakeilia T. Kimbrough (black female, 08-16-2003), who admitted that Tayveon Keaton provided Kimbrough with the firearm to conceal it during the traffic stop. Kimbrough stated that while Tayveon Keaton was attempting to conceal the firearm, Keaton admitted that Keaton cannot have a handgun, that the handgun was "clean", and that Glock does not belong to Keaton.  Your affiant is aware the Keaton is a convicted felon due to, among other things, a Robbery felony conviction in Wisconsin state court case 2022CF004790 and thereby prohibited from possessing or buying firearms.

26.     On March 31, 2025, Adrian Allen purchased a Glock 19 Gen3, 9mm pistol (S/N CCHV668), from EGun Direct, located at 12614 W. Hampton Ave., Butler, Wisconsin.

27.     On April 2, 2025, Adrian Allen purchased a Glock 30S, .45ACP pistol (S/N CDWW109), from EGun Direct, located at 12614 W. Hampton Ave., Butler, Wisconsin.

28.     On April 3, 2025, Adrian Allen purchased a Glock 20c, 10mm pistol (S/N CDFE972), from Brew City Shooter, located at 2339 South 43rd Street, West Milwaukee, Wisconsin.

29.     On April 15, 2025, Adrian Allen purchased a Glock 21 Gen4, .45AUTO pistol (S/N BEKN382), from EGun Direct, located at 12614 W. Hampton Ave., Butler, Wisconsin.

30.	On April 18, 2025, Adrian Allen went to the District Seven Police Station in Milwaukee, Wisconsin. Adrian Allen reported that ten (10) firearms were stolen from Allen's vehicle, identified as a gray Dodge truck with unknown registration plates. Allen reported that the theft of the firearms occurred between April 17, 2025, at 7PM and April 18, 2025, at 7AM., in front of 1935 North 30th Street, Milwaukee. Allen showed the Officer receipts for firearms that were purchased at Brew City Shooter's, Shooter's Shop, and EGun Direct. As Allen was reporting this theft, Allen became agitated and wanted to leave. Allen reported the following firearms stolen: Glock 29 pistol (S/N BXSR052) [purchased by Adrian Allen on March 17, 2025], Freedom Ordinance FX-9 pistol (S/N 070153) [purchased by Adrian Allen on March 19, 2025], Glock 19x (S/N CDZH693) [purchased by Adrian Allen on March 25, 2025], Glock 19 (S/N CDYK411) [purchased by Adrian Allen on February 4, 2025], Glock 19 (CCHV668) [purchased by Adrian Allen on March 31, 2025], Glock 21 (S/N AHEF929) [purchased by Adrian Allen on March 12, 2025], Glock 21 (S/N WXC780) [purchased by Adrian Allen on January 9, 2025], Glock 30s (S/N CDWW109) [purchased by Adrian Allen on April 2, 2025], and Eksen Arms 12 gauge shotgun (S/N 1302582) [purchased by Adrian Allen on January 14, 2025].

31.	On April 18, 2025, Officer Evan Domine conducted an arrest/search warrant operation at 5952 North 63rd Street #1, Milwaukee, Wisconsin. Julius R. Crump (black male, 05-04-1983) was arrested at the residence and was the wanted. Officers arrested Julius Crump inside of the residence and observed a Glock 21, .45 pistol (S/N AHEF929) on the floor. A gun box for the Glock 21 (S/N WXC780) was located on the living room floor. A Taurus G2c, .40 pistol (S/N AEA001649) was also located in the residence. The Glock 21 pistol was purchased by Adrian Allen on March 12, 2025, at Egun Direct. The gun for the gun box located in the living room was purchased by Adrian Allen on January 9, 2025.

32.	On April 22, 2025, Affiant reviewed the Milwaukee Police reports related to Julius Crump's arrest and observed that Julius Crump's iPhone was recovered during the investigation. Affiant applied for and was granted a warrant to search Julius Crump's iPhone. This led to account information with Apple, and on May 12, 2025, Affiant drafted and was granted a warrant to Apple for Julius Crump's iCloud data. In Crump's iCloud data, your Affiant observed messages with "Zae Zae', regarding the purchase of two firearms from a third-party—believed to be Allen, a Glock 21 .45 caliber pistol on (conversation on March 16, 2025) and a 10mm Glock (conversation on March 19, 2025). The Glock 21 .45 caliber conversation timeline is consistent

with the weapon purchased by Allen March 12, 2025, reported stolen by Allen on April 18, 2025 and recovered on April 18, 2025 during the Crump search.

33.    Affiant reviewed portions of the firearm paperwork to locate any accounts that Adrian Allen linked with Allen's firearm purchases. TFO Newport observed Allen was providing his cell phone number as (414) 200-1924. TFO Newport observed Allen provided his email address as gimmeallt1200st@gmail.com.

34.    Affiant reviewed the Milwaukee Police call P2504181366, which occurred on January 8, 2025. The 911 call was made by Adrian Allen, who utilized the phone number of 262-350-0726 to call 911 and report a theft of a firearm. Allen provided his address as 1935 North 26th Street, Milwaukee, Wisconsin. Affiant reviewed the Body Camera footage, which showed that Allen was not located at the residence he reported to the Officers. Allen later appeared through a gangway from an unknown location to speak with Officers. Allen reported to the Officers that Allen had a Glock 26 stolen from him that Allen just purchased on January 7, 2025, in Allen's name. Allen was joined by another person that appeared from the same area that Allen walked from. Allen purchased the gun from E-Gun Direct. Allen only reported one firearm was taken and only identified as Glock 26. The following day when Allen reported the incident to Officer Sloan, two firearms were now missing. Allen provided his actual address at 1938 North 26th Street, Milwaukee, Wisconsin.

35.    On April 22, 2025, Affiant reviewed the Milwaukee Police reports related to Julius Crump's arrest and observed that Julius Crump's iPhone was recovered during the investigation. Affiant applied for and was granted a warrant to search Julius Crump's iPhone.

36.    On May 7, 2025, Affiant reviewed the data extraction from Julius Crump's iPhone. Affiant observed that contained with the data recovered, Julius Crump provided the following account information: crumpjulius1983@icloud.com and 414-888-2996.

37.    On May 12, 2025, Affiant drafted and was granted a warrant to Apple for Julius Crump's iCloud data. On May 21, 2025, TFO Newport reviewed the data and observed that the Apple ID was crumpjulius1983@icloud.com. The last known phone number associated with the account was 4148882996. Another associated phone number is 4147364980.

38.    TFO Newport observed that contained within Crump's iCloud was a photograph of a Glock 21 .45AUTO in a gun case with a translucent extended magazine. TFO Newport observed that the photograph was a forwarded text message to Crump. TFO Newport went back and observed that the attachment was contained within the message thread with "Zae Zae" with

a cell number of 414-207-2874. The message was from March 16, 2025, Zae sent Crump a photograph of the Glock 21 .45 caliber pistol in the gun box. Crump told Zae that "folks" needed to lower the price of the gun. Zae replied that Zae did talk him down to 1300 and that Zae would come over in the morning. The conversation about the firearm did not continue. On March 19, 2025, Zae sent Crump a video of a Glock handgun and referred to it as a 10mm. Crump told Zae that he wanted the firearm. Zae replied, "I'm about to tell him". This conversation concluded and there were no other conversations.

39.     On May 27, 2025, Affiant drafted and was granted a search warrant for "Zae Zae" iCloud account via the cell phone number of 414-207-2874. TFO Newport served the warrant to Apple.

40.     On May 27, 2025, Affiant submitted Tayveon Keaton's cellular phone to the Milwaukee Police Department's High Technology Unit for a forensic examination of Keaton's iPhone that was seized on March 25, 2025. Milwaukee Police Officer Joshua Hermann drafted and was granted a warrant to search Keaton's iPhone. Affiant observed through a preliminary exam, that the iPhone's Apple ID was mrtkeaton00@gmail.com. Affiant observed that the cellular phone number assigned to the iPhone was 414-412-0806; Affiant conducted a check through Law Enforcement database, which Affiant has used in the past and found to be reliable, which identified 414-412-0806 as being carried by AT&T. Affiant reviewed other data contained within the iPhone; that data revealed a social media account that was accessed by Keaton identified as: "Teestreetz1414". Affiant conducted an open search and observed an Instagram profile with the name of "lowend_bigtay" with a rocker of "Tee Streetz". Affiant observed the profile photo and compared that profile photo to a Milwaukee Police Department booking photograph; Affiant observed that Tayveon Keaton was in the profile photo and depicted in the Instagram page under Highlights and other posted photographs. Affiant checked the last photograph to see how long ago this profile page was active; Affiant observed that the last photograph was posted 11 weeks ago, which would put the date range within March of 2025. The significance of March of 2025 is because Keaton was arrested in possession of Adrian Allen's firearm during that month.

41.     On May 30, 2025, Affiant was made aware that Adrian Allen purchased two firearms in May of 2025. Affiant was made aware that one firearm was purchased on May 8, 2025, from Egun Direct, located at 12614 West Hampton Avenue, Butler, Wisconsin. Affiant contacted Egun direct, where Egun provided the purchase paperwork and surveillance video of Allen's purchase. Affiant reviewed the paperwork and surveillance video, where Affiant observed that

Allen purchased a Glock G41 Gen4, .45 ACP pistol (S/N BMWZ983). Allen arrived as the front passenger in a silver Chrysler 200 with a Wisconsin registration plate and black rims. The driver was an unknown black male, wearing a yellow t-shirt. Additionally, Egun provided the firearm purchase paperwork and surveillance video for the May 30, 2025, firearm purchase. Affiant reviewed the records, which showed that Allen purchased a Glock 34, 9mm pistol (S/N AGDR320). Affiant reviewed the surveillance video, which showed that Allen arrived alone in a "Lyft marked" vehicle and exited the rear passenger seat, which was consistent with being a customer. Allen entered Egun, purchased the Glock and exited the store. Affiant observed that Allen was carrying the Glock box in the back of his sweatshirt and entered a vehicle that was parked a block away. Affiant observed that the vehicle was a blue Volkswagen Station wagon with a Wisconsin registration plate, a white marking on the gas cap on the passenger side, and a roof rack. Affiant conducted a check through law enforcement records and located an identical vehicle, with a Wisconsin plate of ATU-7024; a DOT check revealed that plate listed to Synthia D. Lee (DOB: 11-08-1966), of 6527 W. Keefe Avenue Pkwy, Milwaukee. Allen entered the front passenger seat of this vehicle before the vehicle drove Allen away.

42.     In June of 2025, Affiant was made aware that another one of Adrian Allen's Glocks was seized. Affiant reviewed the E-trace, which showed that firearm was purchased by Adrian Allen on June 11, 2025 and was seized 6 days later. Affiant reviewed Milwaukee Police reports and observed that Affiant assisted in the arrest operation that led to the seizure of Adrian Allen's Glock. In June of 2025, Milwaukee Police, ATF TFO's and Affiant arrested Davonte C. Wilson (black male, 09-15-2002) along with Fontrell D. Wilson (black male, 10-31-2002) near Milwaukee Police District 2 regarding an Armed Robbery investigation. Davonte Wilson had marijuana and Adrian Allen's Glock in his possession. During the QP, Davonte Wilson admitted to purchasing the Glock from "a guy" for $700 on the street; Davonte Wilson noted that the firearm appeared to be brand new. A check of law enforcement databases revealed that Fontrell Wilson and Adrian Allen reported to residing at 4566 N 84th Street #2, Milwaukee, in 2023; that is the known connection between Fontrell Wilson, Adrian Allen and Davonte Wilson. Based on the seizure, Affiant requested the firearm purchase paperwork from EGun Direct, located at 12614 West Hampton Avenue, Butler, Wisconsin. EGun provided the paperwork, along with three surveillance camera angles. Affiant reviewed the surveillance videos and observed that Allen came alone into the store, purchased a Glock and exited the store. Affiant did not obtain any exterior surveillance video, because the video was overwritten. Affiant reviewed the firearm

paperwork, confirmed that the firearm was the same make, model and serial number of the Glock that was in the custody of Davonte Wilson. TFO Newport reviewed the firearm purchase receipt, which showed contact information for Adrian Allen. Allen provided his phone number as 414-791-5474.

43. On July 15, 2025, TFO Newport reviewed a phone download obtained from Xavier Parks' (hereinafter referred to as "XP") cell phones recovered during an investigation. ATF TFO Evan Domine conducted a drug/gun investigation involving Xavier Parks. After the arrest, information surfaced that XP was involved with another subject, Julius Crump, who was found in possession of one of Adrian Allen's Glocks. Julius Crump was in possession of Adrian Allen's Glock 21 Gen 4 pistol, serial number AHEF929; Allen purchased that Glock on March 12, 2025, at Egun Direct. Additionally, Adrian Allen's Glock gun box for the Glock bearing serial number WXC780, was discovered in Julius Crump's apartment. TFO Newport reviewed the phone download and observed a chat related to the purchase of Glocks. TFO Newport observed that the dates surrounding some of the conversations were consistent with purchases made by Adrian Allen. The chat conversation was through Facebook messenger and TFO Newport observed the following:

44. The messages started on January 9, 2025, and ended on March 23, 2025. Allen's Facebook name was identified as "Twelfth Street" (hereinafter referred to as "AA". On January 9, 2025, at 2:57:30 PM, Parks asked, "Wya ??" AA called XP through Facebook. XP asked, "What is it?" AA replied, "Gen 4 19 brand new out the store & I'm 5 mins away". XP stated, "Ok". AA tried to call to call XP a couple of times after telling XP that AA was at the meet location.

45. On January 10, 2025, at 6:33:21 PM, AA said, "Brand new out the store 1k$" and then sent a video. TFO Newport reviewed the video and observed that the firearm was a Glock 21 Gen 4, .45AUTO. TFO Newport knows that on January 9, 2025, AA purchased a Glock 21 Gen 4, .25AUTO, serial number WXC780, from Egun Direct. XP said that it cost too much money and AA told him that it was "900 flat! Lowest brand new out da store" and identified it as a"45 Glock 21 with explosive tips". On January 11, 2025, at 6:01:14 PM, AA stated, **"Brand new out da store I need dat much cause I gotta go report it stolen"** XP told AA that he could not buy it and AA lowered the price to 850. AA lowered the price again for XP and said that he would do it for 800.

46. On February 12, 2025, at 11:04:55 AM, AA told XP, "I got a green switch fa yu you can throw on yo Glock gimmie 175 bigbro". On February 15, 2025, at 8:18:34 AM, AA sent a video of a Glock with a black machine gun conversion device (MCD) affixed to it. The MCD was affixed

to a Glock 21 Gen 4, .45AUTO. AA turned the gun around, where TFO Newport viewed the serial number affixed to the firearm; the serial number was "WXC780", which is AA's gun that AA purchased on January 9, 2025. Therefore, TFO Newport further believes that "Twelfth Street" is Adrian Allen. Lastly, Adrian Allen was in possession of a MCD around February 15, 2025. Allen asked for "900 flat with the switch unc".

47.     On March 15, 2025, at 2:38:34 PM, AA sent XP a picture of a ghost gun with a threaded barrel. XP stated that he was "good on ghost".

48.     On March 16, 2025, at 10:32:19 AM, AA sent a picture of a Glock in a gun box with firearm accessories around the Glock, asking for "8". XP asked for a lower price. AA said, "I can't I need 8 it's 2 days old brand new out da store I'ma have too go report this bitch allat plus I paid ard 8". There were some calls in between and then AA sent an address "4070 n Elmhurst rd" and "You go see me outside". AA asked XP, "Let me buy datt button bigbro"; "button" is a common term used to describe a MCD.

49.     On March 18, 2025, at 12:25:03 PM, AA sent a picture of a Glock 29 10mm AUTO pistol. XP asked how much and AA told him that it was sold. TFO Newport knows that on March 18, 2025, Adrian Allen purchased a Glock 29 10mm pistol, serial number BXSR052, from Shooter's Shoppe. There were some calls and XP then asked for AA to send a picture. On March 19, 2025, at 4:15:16 PM, AA sent a video of a Glock 20C 10mm AUTO pistol; TFO Newport attempted to slow the video down to review the serial number, but the video frames are too blurry. On March 21, 2025, at 11:02:40 PM, XP said that they can work out a deal for 10mm and "that" (there was conversation regarding a watch). On March 21, 2025, at 11:03:18 PM, AA sent a picture of a Glock 20C 10mm AUTO with aftermarket white lettering in the manufacturer stamps. AA stated, "Ian go lie bigbro 9". XP asked why he raised the price and requested "1100 for both". AA replied, **"This was 850 cmon atleast let me make 50 smh".** On March 23, 2025, at 8:26:37 PM, AA sent a video of a Glock, but the video would not play properly. There were not conversations after the video.

50.     Your affiant is aware based on training and experience that for each of the above mentioned firearms purchases, Allen would have been required by federal law to fill out ATF form 4703 by the gun seller, in which he claimed that he was the actual purchaser of each weapon despite being warned by the form that he was not the actual purchaser if he was acquiring any of the weapons on behalf of another.

51.     On August 26, 2025, I testified in front of a Grand Jury. The Grand Jury indicted Adrian Allen for federal violations of Title 18 Section 922(a)(6) and Title 18 Section 922(a)(1)(A). A federal arrest warrant was issued for Adrian Allen.

52.     I conducted a search for any updated addresses for Adrian Allen. I observed that in August of 2025, that Adrian Allen provided a new address of 4070 North Elmhurst Ave, Milwaukee, in two different law enforcement databases; I have used these databases in the past and have found them to be credible and reliable. I conducted surveillance but did not see Allen at the location. Based on the inability to locate Allen, I requested a social media pen register to be placed on Allen's Instagram. I was granted the pen register and monitored Allen's IP activity. I observed that Allen was connected to two IP addresses frequently. I conducted a check for the service provider of the cellular phones and subpoenaed Charter Communications for account records. I received the account record for the IP address, which was 5022 North 47th Street, Milwaukee.

53.     On September 12, 2025, I conducted surveillance of 5022 North 47th Street, Milwaukee. I observed that Allen exited the front door of the residence, received a ride to the corner store located at North 47th Street and West Hampton Avenue, and then returned home. I called for additional resources to arrest Allen. Officers knocked on the front door, received cooperation to enter the premise, located Allen in the hallway and arrested Allen. I spoke with the head of the household, Varleer Davis, who stated that she pays half of the rent and her daughter pays for the other half. Davis consented for us to search the residence, revoking part of the consent at a later time and reduced our search to her daughter's bedroom, who was dating Adrian Allen and who Davis stated that Allen spends most of his time in her room. I walked into the room after receiving verbal consent and observed a cell phone on the bed charging. Once I received the consent form from another Officer, I read it to Davis, which she stated that she understood her consenting to search and signed the form. Inside of the bedroom that Allen frequents, Task Force Officer Evan Domine located Adrian Allen's Wisconsin Identification Card and his Cashapp card. The phone on the bed that I originally observed was a black Foxx brand cell phone with one rear camera in a clear case. The evidence was collected, conveyed to the Milwaukee Police Department's Police Administration Building and placed onto evidence.

**TECHNICAL TERMS**

54. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock.

Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

55.  Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at www.samsung.com, I know that the Target Cell Phone has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In

my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

56. Based on my knowledge, training, and experience, I know that cellular telephones can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

57. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Target Cell Phone was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Target Cell Phone because:

58. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

59. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

60. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

61. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

62.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

63.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Target Cell Phone consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

64.     *Manner of execution.*  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

65.     Based on all of the aforementioned information as well as my training and experience and the investigation to date, your affiant believes there is probable cause to search the Target Cell Phone, more fully described in Attachment A, for evidence of violations of Title 18, USC, Section 922(a)(1)(A) (Dealing Firearms without a License) and Title 18, USC, Section 922(a)(6) (False Statement to Purchase a Firearm), as more fully set forth in Attachment B.

## ATTACHMENT A

**Property to Be Searched**

1. "The Target Cell Phone", described as a **black Foxx brand cell phone with one rear camera in a clear case,** currently on MPD Inventory #2514868, item #2.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

All records and information contained in the Target Cell Phone, more fully described in Attachment A, that relate to violations of Title 18, USC, Section 922(a)(1)(A) (Dealing Firearms without a License) and Title 18, USC, Section 922(a)(6) (False Statement to Purchase a Firearm) involving Adrian Allen, including but not limited to the following:

    a.    photographs, videos, or other media storage connected to the purchase, manufacture or sale of firearms;

    b.    any messages or communications using any medium or application relating to the manufacture, sale or purchase of firearms

    b.    any stored GPS location tracking/logging files that may provide evidence as to the targets' travels, and may provide evidence as to the location where the alleged illegal actions occurred;

    c.    types, amounts, and prices of firearms purchased or sold and any information related to source(s) of firearms or firearms parts;

    d.    any and all financial records connected to the purchase/sale of firearms;

    e.    any evidence of the proceeds of firearm trafficking activities, including photographs of United States currency or bank records or financial records; and

    f.    lists of firearm customers and/or sources and related identifying information;.

    1.    Evidence of user attribution showing who used or owned the Target Cell Phone at the time the things described in this warrant were created, edited, or deleted, such as logs,

phonebooks, saved usernames and passwords, documents, photographs, biometric information and browsing history;

        2.      Records evidencing the use of the Internet Protocol address to communicate with using the internet including:

        a.      records of Internet Protocol addresses used;

        b.      records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

        As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

        This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.